IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

```
FREDERICK BAKER,                *
         Plaintiff              *
            vs.                 * CIVIL ACTION NO. MJG-17-546
UNITED STATES OF AMERICA,       *
         Defendant              *
*     *     *     *     *     *     *     *     *     *
```

Memorandum and Order Re: Motion to Dismiss

The Court has before it the United States' Motion to Dismiss Claims Exceeding Administratively Sought Damages for Lack of Subject Matter Jurisdiction [ECF No. 10] and the materials submitted relating thereto. The Court finds a hearing unnecessary.

I.  BACKGROUND

This lawsuit arises out of the contamination of Frederick Baker's ("Plaintiff") real property located in Annapolis, Maryland. Plaintiff alleges that the United States Navy ("Navy") repeatedly trespassed on his property and dumped waste, based upon the incorrect assumption that it was naval property. In February 2017, Plaintiff filed suit against the United States alleging one count of trespass. Plaintiff alleges that his

property is unsaleable and worthless and now seeks $730,761.86 in compensatory damages. The United States filed the instant Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction for damages in excess of the $169,861.86, which was the total amount claimed by Plaintiff administratively.

A. Factual Background[1]

On February 6, 2003, Plaintiff purchased property located at 2009 Woodland Road in Annapolis, Maryland ("Baker Property"). The Baker Property abuts property owned by the Navy. Plaintiff's home is on the Baker Property atop a small hill, overlooking Naval Station Storage Yard 2 ("Storage Yard 2"). When Plaintiff purchased the property, he was unaware that throughout the 1940's the Navy had used Storage Yard 2 for waste and oil disposal. In 1973, the Navy removed bulk waste materials from Storage Yard 2 and covered the area with clean soil.

In the spring of 2012, Plaintiff observed stakes and flags placed on his property in the Northwest Ravine, an area adjacent to, but outside of, Navy property and Storage Yard Two. He informed the Navy personnel that this was on his property, and

---

[1] "Facts" contained herein are as alleged by Plaintiff and not necessarily agreed to by Defendant.

after he showed them a plat describing his property, the Navy suspended work. After subsequent investigation, the Navy determined that Plaintiff did in fact own the property in question.

After acknowledging that this area was Plaintiff's property, the Navy entered into a right-of-entry agreement to conduct "environmental restoration" of the area. During this restoration, the Navy removed trees from the Baker Property. Plaintiff was then able to see the solid waste dumped on his property, including large concrete metal rods and other scrap metals protruding from the soil. In 2012 and 2013, the Navy removed the waste and asbestos containing materials from the Northwest Ravine.

On January 23, 2014, Plaintiff met with a representative of the Navy who informed him that, in late 2013, soil contamination had been discovered in the Northwest Ravine. Navy personnel provided Plaintiff with a report entitled <u>Northwest Area Ravine Test Pit Sample Summary</u>. The Navy contaminated the Baker Property with Diesel Range Organics ("DRO"), Oil Range Organics ("ORO"), and Gasoline Range Organics ("GRO"), in excess of Maryland State maximum contaminant levels.[2]

---

[2] The State of Maryland's numeric cleanup standard for GROs and DROs is 230 mg/kg. The Navy's report indicated that levels

3

On March 7, 2014, Plaintiff sent the Navy a letter requesting it to provide him with a connection to public water because he feared that his well was contaminated. The Navy refused to provide this connection, but agreed to test the drinking water on the Baker Property. The Navy subsequently informed him that detectable elevated levels of GRO were present in his drinking water.

On May 30, 2014, Plaintiff and his counsel wrote to the Navy and took the position that the Navy had contaminated his property, causing him to abandon his water well, rendering his property unsaleable and worthless, and totally destroying its $710,000.00 market value. [ECF No. 10-1]. This letter further stated that Plaintiff intended, pursuant to the Federal Torts Claim Act, to seek appropriate relied for the damages he has suffered as a result of the Navy's acts and omissions. Id.

In the summer of 2014, Plaintiff entered into another right-of-entry agreement permitting the Navy to continue investigations of the area and to remove contaminated soil. A subsequent environmental report indicated that the soil on the Baker Property still had DRO levels exceeding Maryland's soil cleanup standards.

---

of GRO ranged from 3 to 380 mg/kg and levels of DROs ranged from 12 to 2,400 mg/kg.

Navy real estate personnel admitted that the Navy had trespassed on the Baker Property due to its mistaken belief that the Northwest Ravine was naval property. However, the Navy has steadfastly maintained the position that is not responsible for contamination of the Baker Property.[3]

B. <u>Procedural Setting</u>

On August 25, 2014, Plaintiff filed two administrative tort claims with the Navy and submitted two Standard Form 95s ("95") for money damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671. Plaintiff filed one 95 ("Form One") requesting $149,100.00, to account for the diminution in value of his Property caused by the Navy's contamination.[4] Plaintiff filed a second 95 ("Form Two") requesting $20,761.86, for the costs incurred when connecting his home to the public water system because of the contamination of his potable water well. [ECF No. 1-1] at 4. The aggregate amount of the totals on the two 95s is $169,861.86.

---

[3] The subsurface investigation report of the Northwest Ravine during the fall of 2015 concluded that the majority of the contamination was outside the naval Property <u>and</u> the Baker Property. [ECF No. 1] at 11. Plaintiff contends that this characterization of the location is incorrect.

[4] The hypothetical value of Baker Property without contamination was $710,000.00. The market value after contamination, with the loss attributable to risk and stigma, was 560,900.00. The diminution in market value attributable to the risk and stigma was $149,100.00. [ECF No. 1-1].

Plaintiff attached to each 95 form individual attachments, a home appraisal, and a letter to Navy counsel. The letter to Navy counsel stated that as a "direct result of the Environmental Contamination Mr. Baker has incurred approximately $170,000 in monetary damages (described in the Forms 95 which are attached). Accordingly, this letter, along with the enclosed Federal Forms 95 formally tenders these claims to the Navy under the Federal Torts Claim Act... for damages incurred to date." [ECF No. 15-1]. Counsel's letter noted that the claim did not include foreseeable damages, as prior to learning of the contamination Mr. Baker had planned to sell the property to fund his retirement.

Furthermore, the letter stated that the "equitable resolution of this dispute, of course, is for the United States Navy to immediately purchase Mr. Baker's property at its full value ($710,000), as supported by the Federal Yellow Book Appraisal enclosed with the Form 95." Id. As of July 23, 2014, the value of the Baker Property was hypothetically valued, if there were no contamination, to be $710,000.00. The appraiser considered "the risk and stigma" attached to the property, and determined that if the property could be sold, the diminished value of the Baker Property would be $560,900.00.

The statement attached to Form One, noted that "based on the contamination, Mr. Baker wishes for the Navy to either (1) make an immediate payment of $149,100.00 for the diminished value of his property, or alternatively, (2) purchase the Property outright for the full, non-contaminated value." [ECF No. 1-1] at 3.

In October of 2014, the Navy requested supplemental information in support of Plaintiff's SF 95 submissions, in accordance with 28 C.F.R. 14.4 and 32 CFR 750.37. [ECF No. 10-3]. Plaintiff's response to the Navy included:

(1) Proof of ownership of the property;

(2) An itemized receipt of payment for necessary repairs;

(3) Evidence and information regarding the responsibility for the United States for the property damage;

(4) Correspondence between the Department of the Navy regarding the right-of-entry agreement;

(5) A copy of an access agreement between Mr. Baker and the Navy whereby the Department of the Navy agreed to make certain payments to Mr. Baker in order to secure access to his property needed for the sampling and study of the contaminated; and

(6) Materials relating to Plaintiff's efforts to sell the property,

    a. Including a letter from a real estate brokerage that Mr. Baker consulted to ascertain whether his property could be sold.

    b. Letter from the brokerage stating that on account of contamination, in his professional opinion, <u>the property is not saleable</u>.

7

[ECF No. 13-B].

On August 31, 2016, the Navy denied Plaintiff's claims pursuant to the discretionary function exception of 28 U.S.C. § 2680.[5]

II. <u>DISMISSAL STANDARD</u>

A party may seek dismissal for lack of subject matter jurisdiction pursuant to Rule[6] 12(b)(1). It is well established that "[t]he burden of proving subject matter jurisdiction on a [Rule 12(b)(1)] motion to dismiss is on the plaintiff, the party asserting jurisdiction." <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982).

A motion made under Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Waverley View Inv'rs, LLC v. United States</u>, 79 F. Supp. 3d 563, 568 (D. Md. 2015) (quoting <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d

---

[5] "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).
[6] All aforementioned Rules refer to the Federal Rules of Civil Procedure.

642, 647 (4th Cir. 1999)). A motion to dismiss pursuant to Rule 12(b)(1) may attack the complaint on its face or attack the existence of subject matter jurisdiction. Richland-Lexington Airport Dist. v. Atlas Properties, Inc., 854 F. Supp. 400, 407 (D.S.C. 1994).

If the complaint is facially attacked, the Court must accept the allegations as true, but no such presumption applies to a factual attack. Id. When considering a factual attack the Court is free to weigh evidence outside of the pleadings and satisfy itself as to the existence of its jurisdiction to hear the case. Waverley View Inv'rs, LLC, 79 F. Supp. 3d at 569.

III. DISCUSSION

Plaintiff brings this lawsuit under the FTCA, which constitutes a "limited waiver" of the United States' sovereign immunity. Molzof v. United States, 502 U.S. 301, 305 (1992). This statute renders the United States liable "in the same manner and to the same extent as a private individual under like circumstances." Id. As the FTCA constitutes a waiver of sovereign immunity, the procedures set forth in Section 28 U.S.C. § 2675 must be adhered to strictly. Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983).

The dispositive issue for this Court is whether the correspondence between the parties and the attachments to the SF 95, including the home appraisal, constitute sufficient notice that Plaintiff was making a total claim for $730,761.86 under 28 U.S.C. § 2675(a).

A. Notice Requirement

Before an action can be instituted under the FTCA, claimants must have exhausted their administrative remedies. 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

The requirements of 28 U.S.C. § 2675 are met when claimant:

> (1) Gives the agency written notice of his or her claim sufficient to enable the agency to investigate;
>
> (2) Places a value on his or her claim.

Williams v. United States, 693 F.2d 555, 557 (5th Cir. 1982)(quoting Adams v. United States, 615 F.2d 284, 288 (5th Cir. 1980)).

The sufficiency of the notice requirement under 2675(a) is "more than a question of technical niceties." Keene Corp., 700 F.2d at 842. The "goal of the administrative claim requirement

is to let the government know what it is likely up against: mandating that a claimant propound a definite monetary demand ensures that '[t]he government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settlement decisions.'" Reilly v. United States, 863 F.2d 149, 173 (1st Cir. 1988) (quoting Martinez v. United States, 780 F.2d 525, 530 (5th Cir. 1986)). Thus, claims brought pursuant to § 2675(a) will be dismissed to the extent there has been a failure to comply with the exhaustion requirement.

    B.    Value of the Claim

The United States does not dispute that Plaintiff provided adequate notice to the Navy of the nature of the claim. The parties dispute the second consideration for adequate notice under § 2675 — whether the Navy had sufficient notice that the Plaintiff was seeking a sum certain of $730,761.86. Plaintiff contends that by reviewing the entirety of his claim, including his 95s, the attached statements, and the appraisal, the Navy had adequate notice of his intent to claim a larger amount of $730,761.86. [ECF No. 13] at 2. The Navy contends that it was only on notice that Plaintiff was seeking $169,861.86 because

the amounts listed on Plaintiff's SF 95 forms in the boxes marked "amount of claim in dollars" totaled this amount.[7]

The typical procedure for notice under § 2675 is the completion of an SF 95. But, a claimant is not required to place the notice on an SF 95, provided that the claimant's supplied material provides sufficient information to apprise the United States that a claim is being asserted against them and a specified amount of damages. Crow v. United States, 631 F.2d 28, 30 (5th Cir. 1980). The notice-of-claim requirement "is an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000).

Regarding notice via letters, in College v. United States, 572 F.2d 453 (4th Cir. 1978), the court determined that the

---

[7] The SF 95 indicates in bold above the space to enter the total amount of the claim, that "[f]ailure to specify may cause forfeiture of your rights." [ECF No. 11]. The box above the space for the claimant's signature states in boldface and capital letters: "I certify that the amount of claim covers only damages and injuries caused by the accident above and agree to accept said amount in full satisfaction and final settlement of this claim." Id. See also Kokotis v. United States Postal Serv., 223 F.3d 275, 277–78 (4th Cir. 2000)(providing an in-depth analysis of evaluating the amount of an SF 95 claim).

letter did not meet the requirements under § 2675 because it only stated that: an accident had occurred, due to the United States, surgery was done at a medical center on specific dates, and there was permanent injury. Consequently, without including a sum certain, the letter was fatally deficient to constitute a valid claim. Id. at 454.

However, other courts have held that claimants met the notice requirements of § 2675, even though the notice was "less than ideal." Richland-Lexington Airport Dist., 854 F. Supp. at 412.[8] In Crow v. United States, 631 F.2d 28(5th Cir. 1980), the United States Court of Appeals for the Fifth Circuit Court held that an invoice and inventory of the items on which the plaintiff's claims were based, and two formal letters of demand sent by the claimant's attorney to the Defendant, constituted a sufficient notice. Id. at 30. The Court observed that the agency had all the information it required to enable it to process and evaluate the claim. Id.

Applying the above principles to the instant action leads the Court to conclude that the communications from Plaintiff to the Navy satisfied § 2675 with regard to the claim for the full uncontaminated value of the Baker Property. Plaintiff was

---

[8] See, e.g., Santiago- Ramirez v. Sec. of Dept. of Def., 984 F.2d 16, 20 (1st Cir. 1993); Farmers State Savs. Bank v. Home Admin., 866 F.2d 276, 277 (8th Cir. 1989).

conscientious in pursuing his claim.  Plaintiff's notice included:

> (1) Two 95s, which noted "see attached statement" for information [ECF No. 1-1];
>
> (2) The attachment stated that Mr. Baker was requesting that the Navy pay him the $149,100.00 for the diminished value of his property, or alternatively, (2) purchase the Property for the full non-contaminated value [ECF No.1-1] at 3;
>
> (3) A detailed appraisal regarding the appraised value of his home with and without the contamination;
>
> (4) The contention that his property was entirely unsaleable [ECF No. 15-1];
>
> (5) Receipts regarding his costs for the water services.

[ECF No. 15-1].

Unlike the plaintiff in College, Baker did in fact place a specific dollar amount on his damages. The SF 95 itself, invites supplementation with additional pages. Murrey v. United States, 73 F.3d 1448, 1452–53 (7th Cir. 1996).  Certainly, if the entirety of Plaintiff's submission were read, notice of his belief in the unsaleable condition of his home would "leap out at the legally sophisticated reader." Id. at 1453.

The situation presented by Plaintiff is analogous to that in Williams v. United States, 693 F.2d 555 (5th Cir. 1982), where the Court determined that the Government had sufficient notice of the claim amount because the claimant had previously filed an action in state court specifying that his damages were

$218,000.00. Id. at 558.  When the Williams claimant subsequently filled out a 95 submission, requesting $7,000.00 in property damages, and referred to his state action, it was reasonable for the Government to supplement his 95 with the facts contained in his complaint from the state action. Id.

The United States alleges that Plaintiff's suggested "equitable" resolution of his claim, requesting the Navy to purchase his home for the untainted value, was improper because "specific performance is not permitted under the FTCA." [ECF No. 15] at 4.  At most, Plaintiff's use of the word "equitable" could be regarded as Surplusage; no "statutory or administrative purpose of investigation or pre-suit settlement was disserved by the inclusion of such surplus verbiage." Erxleben v. United States, 668 F.2d 268, 273 (7th Cir. 1981).  Even though framed as an equitable resolution, Plaintiff provided the Navy counsel with a definite figure representing the amount of damages he claims he suffered as a result of his property's being unsaleable due to the contamination.[9]  Although Plaintiff used the word "equitable" to effectively mean "fair,"– the

---

[9] See Fallon v. United States, 405 F. Supp. 1320, 1322 (D. Mont. 1976) (finding that a claim by a person injured on Post Office property was sufficient even though on the Form 95 on the line designated "personal injury" the words and figures "approximately $15,000" appeared).

specification of the definite amount adequately advised the Navy of its "maximum exposure." Reilly, 863 F.2d at 173.

Plaintiff did not "withhold vital information and hinder settlement of a claim in hopes of obtaining a disposition in court." College, 572 F.2d at 454. On the contrary, Plaintiff timely filed his 95 forms, with a good faith estimate of his damages based on a documented appraisal.[10] At the time of that filing, he communicated that the Environmental Contamination rendered his home "effectively unmarketable." [ECF No. 15-1]. The Navy was apprised of the specifics of the claim by the information contained in the submission and its correspondence with Plaintiff in regards to requests for additional information; combined, this satisfies the notice requirement and statutory purpose of § 2675(a). Plaintiff should not be deprived of the chance to pursue his claim for damages sustained where the Navy was not misled as to how much damage was claimed and why. See Little v. United States, 317 F. Supp. 8 (E.D. Pa. 1970) (determining that a plaintiff who inadvertently submitted a claim only for her medical bills was nevertheless entitled to

---

[10] See Funston v. United States, 513 F. Supp. 1000, 1007 (M.D. Pa. 1981) (determining that where plaintiff's administrative request was broken down into claims for lost earnings, pain and suffering, and the like, the statute places a limit only on the aggregate amount of the claim, not on the various elements of the claim).

bring suit for a higher amount, when the government knew that a mistake was made and had precise prior notice of the full amount plaintiff was seeking in settlement of the claim).

The FTCA is "intended to provide a framework conducive to the administrative settlement of claims, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their merits." <u>Martinez v. United States</u>, 728 F.2d 694, 697 (5th Cir. 1984) (quoting <u>Erxleben</u>, 668 F.2d at 273). It simply cannot be said on the facts of this case that Plaintiff attempted to increase the amount in excess of the amount originally presented to the federal agency.[11] Rather, the Court finds that Plaintiff adequately notified the Navy of the full amount of damage attributable to the Navy's alleged actions, for which he sought compensation.

---

[11] As the United States was adequately placed on notice of the sum certain value, there is no need to analyze whether this falls into an exception under 28 U.S.C. § 2675(b).

IV.  CONCLUSION

   For the foregoing reasons:

   1. Defendant United States' Motion to Dismiss Claims Exceeding Administratively Sought Damages for Lack of Subject Matter Jurisdiction [ECF No. 10] is DENIED.

   2. Plaintiff shall arrange a telephone conference to be held by August 30, 2017, to discuss the scheduling of further proceedings herein.

   SO ORDERED, on Wednesday, August 9, 2017.

/s/
Marvin J. Garbis
United States District Judge
